# EXHIBIT "B"

Electronically FILED by Superior Court of California, County of Los Angeles on 01/29/2021 12:30 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
21STCV03631
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Stephen Goorvitch

James Johnson, Esq., (SBN 242241)
James@thejagfirm.com
Mitchel Brim, Esq., (SBN 239341)
Mitchel@thejagfirm.com
JOHNSON ATTORNEYS GROUP
4440 Von Karman Avenue, Suite 100
Newport Beach, CA 92660
Tel: (949) 566-8300
Fax: (949) 566-8306

Attorneys for Plaintiff,
DONN EDWIN COTTOM

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE

| | |
|---|---|
| DONN EDWIN COTTOM,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC, a Delaware Corporation; B&W AUTOMOTIVE, INC. dba BRAVO CDJR OF ALHAMBRA, a California Corporation; and, DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO.: 21STCV03631<br>Assigned For All Purposes To:<br>Department<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. Breach of Implied Warranty of Merchantability Under Song-Beverly Warranty Act;<br>2. Breach of Express Warranty Under the Song-Beverly Warranty Act; &<br>3. Violation of the Song-Beverly Act Section 1793.2. |

## PARTIES AND VENUE

1. DONN EDWIN COTTOM ("Plaintiff") is an individual who resides in the City of La Mirada, County of Los Angeles, State of California at the time the contract that is the subject of this lawsuit was entered into.

2. FCA US LLC ("FCA" or "Manufacturer") is or was at all material times a Delaware Corporation doing business through its authorized dealerships – B&W AUTOMOTIVE, INC. doing business as BRAVO CDJR OF ALHAMBRA (hereinafter referred to as "B&W" and/or "SELLER") in the City of Alhambra, County of Los Angeles, State of

1

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1. California, (2) CERRITOS DODGE (hereinafter referred to as "CERRITOS") in the City of Cerritos, County of Los Angeles, State of California, and (3) PREMIER CHRYSLER DODGE JEEP RAM (hereinafter referred to as "PREMIER") City of Buena Park, County of Orange, State of California. At all times relevant herein FCA was engaged in the manufacture, sale, distribution, and/or importing of Keep Grand Cherokees and related equipment.

3. B&W is or was at all times a California Corporation engaged in the manufacture, sale, distribution, servicing, repairing and/or importing of Jeep Grand Cherokees and related equipment.

4. CERRITOS is or was at all times a California Corporation engaged in the manufacture, sale, distribution, servicing, repairing and/or importing of Jeep Grand Cherokees and related equipment.

5. PREMIER is or was at all times a California Corporation engaged in the manufacture, sale, distribution, servicing, repairing and/or importing of Jeep Grand Cherokees and related equipment.

6. Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise, of Defendants sued herein as DOES 1 through 25, inclusive, and thus names them under the provisions of §474 of the California Code of Civil Procedure. Defendants, DOES 1 through 25, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein, and are legally liable to Plaintiff and/or they are the alter-ego of the Defendants named herein. Plaintiff will set forth the true names and capacities of the fictitiously named Defendants together with appropriate charging allegations when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated as a "DOE" is responsible in some manner for the events herein referenced to and caused injury and damage to Plaintiff as herein alleged.

7. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants, and each of them, were the agents, servants, and/or employees of each of their Co-Defendants. Plaintiff is informed and believes, and thereon alleges, that in doing the things hereinafter alleged, Defendants and each of them, were acting in the course and scope of

1 | their employment as such agents, servants, and/or employees, and with the permission, consent,
2 | knowledge and/or ratification of their Co-Defendants, principals and/or employers. All acts of
3 | the Manufacturer's employees as hereinafter alleged were authorized or ratified by the owner
4 | and/or managing agents of FCA and/or B&W.

5 | 8. Each Defendant, whether actually or fictitiously named herein, was the principal,
6 | agent (actual or ostensible), co-conspirator, or employee of each other Defendant and in acting as
7 | such principal or within the course and scope of such employment, agency, or conspiracy, took
8 | some part in the acts and omissions hereinafter set forth by reason of which each Defendant is
9 | liable to Plaintiff for the relief prayed for herein.

## SUMMARY OF ALLEGATIONS

11 | 9. On or about June 12, 2016, Manufacturer, FCA and B&W and DOES 1 through
12 | 25 inclusive, manufactured, distributed, advertised, and/or placed into the stream of commerce a
13 | Certified Pre-Owned ("CPO") 2014 Jeep Grand Cherokee, Vehicle Identification Number
14 | 1C4RJFBG9EC363212 ("Subject Vehicle") for its sale/lease in the State of California. Prior to
15 | purchasing the Subject Vehicle, Plaintiff reviewed marketing brochures, viewed television
16 | commercials and/or heard radio commercials about the qualities of the 2014 Jeep Grand
17 | Cherokee. Plaintiff also relied upon FCA's reputation as an established and experienced auto
18 | manufacturer of Jeep Grand Cherokees. Plaintiff further relied on the statements during the sales
19 | process by FCA and B&W agents and within the marketing brochures provided, including the
20 | statements that the new 2014 Grand Cherokee delivers reimagined luxury and redefined
21 | capability to perform heroically in all driving conditions,, are beautifully resilient, with a harsh
22 | weather worry free design to work together in true harmony, "Best -In-Class", all new 8-speed
23 | automatic transmission, with construction that provides additional gears with no gain in weight,
24 | with enhanced acceleration with reduced fuel consumption, Select Terrain traction management
25 | that adjusts for the ultimate performance over snow-and ice- covered roads. However, FCA,
26 | B&W and its authorized agents did not disclose to Plaintiff any information about the
27 | transmission, powertrain, transfer case, engine, 4-wheel drive and driveshaft defects. These
28 | omissions were material to Plaintiff's decision to purchase the Subject Vehicle. Had FCA, B&W

1  and/or its authorized agents publicly or privately disclosed said defects in the Subject Vehicle
2  before Plaintiff purchased it, Plaintiff would have been aware of such disclosures, and would not
3  have purchased the Subject Vehicle.

4      10.    On or about June 12, 2016, Plaintiff purchased the CPO Subject Vehicle with
5  approximately 24,386 miles from B & W, located 1100 W. Main Street, Alhambra, CA 91801
6  for his personal, family, and/or household use. Plaintiff has been making monthly payments of
7  $667.61. Plaintiff signed a Retail Installment Sales Contract (hereinafter referred to as "RISC")
8  for the purchase of the Subject Vehicle. The RISC is in the possession of the Defendants.

9      11.    Along with the purchase of the Subject Vehicle, Plaintiff received written
10 warranties and other express and implied warranties including, but not limited to, warranties
11 from Manufacturer and the seller that the Subject Vehicle and its components would be free from
12 all defects in material and workmanship; that the Subject Vehicle would pass without objection
13 in the trade under the contract description; that the Subject Vehicle would be fit for the ordinary
14 purposes for which it was intended; that the Subject Vehicle would conform to the promises and
15 affirmations of fact made; that Defendants, and each of them, would perform any repairs,
16 alignments, adjustments, and/or replacements of any parts necessary to ensure that the Subject
17 Vehicle was free from any defects in material and workmanship. The original factory, powertrain
18 and CPO warranties for the Subject Vehicle were effective from the original in-service-date
19 ("ISD") through January 26, 2021 or 100,000 miles, whichever occurs first. (A copy of the
20 written warranty is in the possession of the Defendants).

21     12.    Plaintiff has performed all the conditions under the purchase agreement and under
22 the express and implied warranties given to him, except insofar as the acts and/or omissions of
23 the Defendants, and each of them, as alleged herein, prevented and/or excused such performance.

24     13.    Within approximately 4 years of ownership, the Subject Vehicle has presented to
25 an FCA authorized service and repair facility and/or dealerships, B&W, CERRITOS and
26 PREMIER, on at least ten (10) separate occasions for transmission, transfer case, drivetrain, 4-
27 wheel drive and driveshaft defects/nonconformities resulting in the Subject Vehicle being out of
28

service one hundred and thirty-five (135) days by reason of repair of nonconformities. Repair Orders/Invoices are in the possession of Defendants.

14. The defects, malfunctions, and/or nonconformities with the Subject Vehicle include the following: a kick when shifting from part to reverse and reverse to park, auto park featured disabled, tire pressure sensor reading incorrectly, blower motor inoperative, water pump and thermostat leaking, purge line cracked, transmission oil pump seal leaking, engine oil leak, a whining noise while accelerating and coming to a stop, 4-wheel driving going on and off, ticking and/or cracking noise upon start up and hesitation when accelerating.

15. Each time Plaintiff delivered the nonconforming Subject Vehicle to FCA and/or its authorized service and repair facility, including B&W, CERRITOS and PREMIER, Plaintiff notified Defendants and each of them, of the defects, malfunctions and/or nonconformities present in the Subject Vehicle and demanded repair, adjustment, and/or replacement of any necessary parts to conform the Subject Vehicle to the applicable warranties.

16. Each time Plaintiff delivered the nonconforming Subject Vehicle to a Manufacturer-authorized service and repair facility, Defendants, and each of them, represented to Plaintiff that they could and would conform the Subject Vehicle to the applicable warranties, that in fact they did conform the Subject Vehicle to the applicable warranties. However, Manufacturer or its representatives failed to conform the Subject Vehicle to the applicable warranties because said defects, malfunctions, and/or nonconformities continue to exist even after a reasonable number of attempts to repair was given.

### Repair History of Subject Vehicle After Plaintiff's Purchase

17. On or about June 22, 2016, with 25,396 miles, Plaintiff presented the Subject Vehicle to B&W for Recall S27. The service technician reprogrammed the Powertrain Control Module ("PCM"), Transmission Control Module ("TCM"), Radio Frequency Hub ("RFH") and Instrument Panel Cluster ("IPC") modules. All repairs were covered under the Defendants' written warranty. The service technician and/or service manager of B&W represented to Plaintiff that the Subject Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on

this representation by the service technician and/or service manager at B&W. The Subject Vehicle was out of service one (1) day.

18. On or about, August 9, 2017, with 40,264 miles, Plaintiff presented the Subject Vehicle to CERRITOS because of a transmission concern - a kick when shifting from park to reverse and reverse to drive. The service technician performed a quick learn, resetting the transmission, and the vehicle was out of service one (1) day. All repairs were covered under Defendants' written warranty. The service technician and/or service manager of CERRITOS represented to Plaintiff that the Subject Vehicle had been repaired and was safe to drive.

19. Plaintiff reasonably relied on this representation by the service technician and/or service manager at CERRITOS.

20. On or about, September 27, 2017, with 42,617 miles, Plaintiff presented the Subject Vehicle to CERRITOS because the airbag and seat belt warning lights were on and the message center reads "auto park feature disabled." The technician found the main connector under the driver seat not unconnected and reinstalled the connector. The Subject Vehicle was out of service one (1) day.

21. On or about, July 11, 2018, with 52,583 miles, Plaintiff presented the Subject Vehicle to CERRITOS for Recall U65. The technician performed the recall and flashed the PCM. All repairs were covered under the Defendants' written warranty. The service technician and/or service manager of CERRITOS represented to Plaintiff that the Subject Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation by the service technician and/or service manager at CERRITOS. The Subject Vehicle was out of service one (1) day.

22. On or about, December 27, 2018, with 57,502 miles, Plaintiff presented the Subject Vehicle to PREMIER because the front left tire pressure sensor was not operating as designed. The service technician verified the concern and replaced the sensor. The Subject Vehicle was out of service one (1) day.

23. On or about, March 7, 2019, with 59,771 miles, Plaintiff presented the Subject Vehicle to PREMIER because: (1) the blower to the motor was inoperative and (2) to perform

6

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Recall UC1. The service technician replaced the blower for the motor and reprogrammed the
2  PCM per the Recall. The service technician and/or service manager of PREMIER represented to
3  Plaintiff that the Subject Vehicle had been repaired and was safe to drive. Plaintiff reasonably
4  relied on this representation by the service technician and/or service manager at PREMIER. The
5  Subject Vehicle was out of service three (3) days.
6         24.    On or about, October 9, 2019, with 68,065 miles, Plaintiff presented the Subject
7  Vehicle to PREMIER because there was a coolant leak. The service technician verified the
8  concern and replaced the water pump, thermostat, and purge line. The service technician and/or
9  service manager of PREMIER represented to Plaintiff that the Subject Vehicle had been repaired
10 and was safe to drive. Plaintiff reasonably relied on this representation by the service technician
11 and/or service manager at PREMIER. The Subject Vehicle was out of service seven (7) days.
12        25.    On or about, January 3, 2020, with 71, 202 miles, Plaintiff presented the Subject
13 Vehicle to PREMIER because there was a fluid leak. The service technician inspected the
14 transmission oil pump and found the seal leaking fluid. The technician inspected for oil leaks and
15 found oil in the engine oil filter housing area, the Subject Vehicle was lifted on a shop lift, the
16 transmission was inspected and found fluid leaking as per Plaintiff complaint. The service
17 technician found the transmission fluid leaking out of the transmission bell housing area, the
18 transmission torque converter and covers were removed, and the technician found transmission
19 fluid coming from the torque converter hub area. The service technician performed an 8-speed
20 diagnostic process tutorial test, removing the transfer case and transmission, and found the
21 torque converter hub oil seal leaking. The torque converter hub oil seal was replaced. In addition,
22 the service technician inspected the Subject Vehicle for an engine oil leak, the technician found
23 the engine intake seal gaskets and oil filter housing leaking fluid, dye was added, and the Subject
24 Vehicle was driven with a black light and confirmed the engine oil leak. The technician removed
25 the intake and replaced the upper and lower gaskets, rechecked the engine oil and found it still to
26 be leaking, the technician removed the intake and oil adapter, removed the oil filter housing, and
27 found that the oil filter hosing was cracked. The service technician replaced the engine oil filter
28 housing adaptor.  The service technician and/or service manager of PREMIER represented to

1 Plaintiff that the Subject Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation by the service technician and/or service manager at PREMIER CDJR. The Subject Vehicle was out of service seven (7) days.

26. On or about, January 9, 2020, within 56 miles of driving, Plaintiff returned the Subject Vehicle to PREMIER because while accelerating and coming to a stop the vehicle began making a whining noise. The service technician: (1) performed a WI-Tech diagnostic test, no Diagnostic Trouble Codes ("DTC's") were detected; (2) tested the Subject Vehicle to replicate the concern and found the transmission making a whining noise in 2nd, 3rd, 4th, and 5th gears. The technician performed an 8-speed process tutorial test per service information, removed the transmission oil pan, inspected, and found metal debris in the transmission oil pan. The technician provided a digital image to FCA and a transmission replacement was authorized. The transmission was replaced, fluid levels were checked by the technician who found it to be low 2 quarts of fluid. The technician reverse flash the transmission oil cooler and found the oil cooler restricted and replaced the transmission oil cooler, reprogramed the new TCM, performed a quick learn and verified the miles. The service technician replaced the engine oil filter housing adaptor. The service technician and/or service manager of PREMIER represented to Plaintiff that the Subject Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation by the service technician and/or service manager at PREMIER. The Subject Vehicle was out of service twenty-one (21) days.

27. On or about, June 1, 2020, with approximately 73,500 miles while coming down the mountain from Big Bear with his family in the Subject Vehicle, the Plaintiff began to experience a hesitation when accelerating, the Subject Vehicle was jolting not wanting to advance, the 4-wheel drive light began flashing and a noise was heard from underneath. The failure of the transfer case can render the Subject Vehicle useless placing Plaintiff, his family and other drivers, and their passengers at risk for serious bodily injury and/or death.

28. On or about, July 1, 2020, with 73,677 miles, Plaintiff presented the Subject Vehicle to PREMIER because of a hesitation when accelerating, the Subject Vehicle jolted not wanting to advance, the 4-wheel drive light flashed repeatedly, and a noise was heard from

8

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

underneath. The service technician found burnt fluid in the transfer case and an internal failure with the transfer case motor. The technician replaced the transfer case assembly including the motor. After the replacement of the transfer case assembly the technician still found the Subject Vehicle exhibiting engagement/transmission concerns. The transfer case module was replaced due to an internal failure. The service technician replaced the engine oil filter housing adaptor. The service technician and/or service manager of PREMIER represented to Plaintiff that the Subject Vehicle had been repaired and was safe to drive. Plaintiff reasonably relied on this representation by the service technician and/or service manager at PREMIER. The Subject Vehicle was out of service ninety (90) days.

29. On or about, September 3, 2020, Plaintiff contacted FCA on several occasions and requested a repurchase of the Subject Vehicle.

30. On or about, October 12, 2020, after repeated requests to FCA requesting repurchase of the Subject Vehicle, FCA declined Plaintiff's buyback request without any reason provided or having conducted a thorough independent investigation into whether the Subject Vehicle qualified as a lemon under the Song-Beverly Consumer Warranty Act ("Song-Beverly").

## FIRST CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY UNDER SONG-BEVERLY WARRANTY ACT

(Plaintiff against All Defendants and DOES 1 through 25, Inclusive)

31. Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 30 of this Complaint, as though fully set forth herein.

32. The distribution and sale of the Subject Vehicle was accompanied by the Manufacturer implied warranty that the Subject Vehicle was merchantable.

33. Defendants, each of them, impliedly warranted, inter alia, that the Subject Vehicle would pass without objection in the trade under the contract description; that the Subject Vehicle was fit for the ordinary purposes for which it was intended; that the Subject Vehicle was adequately assembled; and/or that the Subject Vehicle conformed to the promises or affirmations of fact made to Plaintiff.

34. As evidenced by the defects, malfunctions, and/or nonconformities alleged herein, the Subject Vehicle was not merchantable because: (1) it did not have the quality that a buyer would reasonably expect, (2) it could not pass without objection in the trade under the contract description, (3) it was not fit for the ordinary purposes for which it was intended, and (4) it did not or could not be conformed to the promises or affirmations of fact made to Plaintiff.

35. Upon discovery of the Subject Vehicle's nonconformities, Plaintiff took reasonable steps to notify Defendants, and each of them, within a reasonable time that the Subject Vehicle did not have the quality that a buyer would reasonably expect and, further, justifiably revoked acceptance of the nonconforming Subject Vehicle.

36. Plaintiff hereby gives written notice and justifiably revokes acceptance of the nonconforming Subject Vehicle under the Commercial Code §§ 2607, 2608. Plaintiff further demands that the Manufacturer cancel the sale, take back the nonconforming Subject Vehicle, refund all money expended, including cost of rental cars, pay the difference between the value of the Subject Vehicle as accepted and the value the Subject Vehicle would have had if it had been as warranted, and/or pay damages under the Commercial Code §§ 2711, 2714, and 2715. Defendants, and each of them, have refused to comply.

37. Plaintiff hereby gives written notice and makes demand upon Manufacturer for replacement or restitution, pursuant to Song-Beverly. Defendants, and each of them, knew of their obligations under Song-Beverly; however, despite Plaintiff's demand, Defendants and each of them, have intentionally failed and refused to make restitution or replacement pursuant to Song-Beverly.

38. As a result of the acts and/or omissions of the Defendants, and each of them, Plaintiff has sustained damage in the amount actually paid or payable under the contract, plus prejudgment interest thereon at the legal rate. Plaintiff will seek leave to amend this Complaint to set forth the exact amount thereof when that amount is ascertained.

39. As a further result of the actions of Defendants, and each of them, Plaintiff has sustained damages equal to the difference between the value of the Subject Vehicle as accepted and the value of the Subject Vehicle would have had it if had been as warranted.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

40. As a direct result of the acts and/or omissions of Defendants, and each of them, and in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to Song-Beverly, Plaintiff, in addition to his other remedies, is entitled to the recovery of his attorney's fees based upon actual time expended and reasonably incurred, in connection with the commencement and prosecution of this action.

## SECOND CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY UNDER SONG-BEVERLY WARRANTY ACT

(Against All Defendants and DOES 1 through 25, Inclusive)

41. Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 30 of this Complaint, as though fully set forth herein.

42. The Subject Vehicle had defects, malfunctions, and/or nonconformities which include the transmission, powertrain, transfer case, engine, 4-wheel drive and driveshaft defects covered by the warranty that substantially impaired its use, value or safety to Plaintiff.

42. Plaintiff delivered the Subject Vehicle to Manufacturer or its authorized repair facilities – (1) B&W; (2) CERRITOS; and, (3) PREMIER for repair.

43. Defendants, and each of them, failed to service or repair the Subject Vehicle to match the written warranty after a reasonable number of opportunities to do so. See *Silvio v. Ford Motor Company* (2003) 135 Cal.Rptr. 2d 846 (A manufacturer and/or authorized repair facility needs more than one attempt to conform a nonconformity to the express warranty).

44. The acts and/or omissions of Defendants, and each of them, in failing to perform the proper repairs, part replacements, and/or adjustments, to conform the Subject Vehicle to the applicable express warranties constitute a breach of the express warranties that the Manufacturer provided to Plaintiff, thereby breaching Defendants obligations under Song-Beverly Consumer Warranty Act ("Song-Beverly").

45. Defendants, and each of them, failed to perform the necessary repairs and/or service in good and workmanlike manner. The actions taken by Defendants, and each of them, were insufficient to make the Subject Vehicle conform to the express warranties and/or proper

11

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 operational characteristics of like vehicles, all in violation of Defendants' obligations under Song-Beverly.

46.   Plaintiff hereby gives written notice and makes demand upon Manufacturer for replacement or restitution, pursuant to Song-Beverly. Defendants and each of them, knowing their obligations under Song-Beverly, and despite Plaintiff's demand, failed and refused to make restitution or replacement according to the mandates of Song-Beverly. The failure of Defendants, and each of them, to refund the price paid and payable or to replace the Subject Vehicle was intentional and justifies an award of a Civil Penalty in an amount not to exceed two times Plaintiff's actual damages. Defendants failed to conduct a thorough investigation into whether the Subject Vehicle qualified for restitution and/or a repurchase as required by Song-Beverly. *Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294; *Lukather v. General Motors, LLC* (2010) 181 Cal.App.4th 1041, 1051; CACI 3201.

47.   As a result of the acts and/or omissions of Defendants, and each of them, and pursuant to the provisions of the Song-Beverly, Plaintiff is entitled to replacement of the Subject Vehicle or restitution of the amount actually paid or payable under the contract, at Plaintiff's election, plus prejudgment interest thereon at the legal rate. Plaintiff will seek leave of Court to amend this Complaint to set forth the exact amount of restitution and interest, upon election, when that amount has been ascertained.

48.   Additionally, as a result of the acts and/or omissions of Defendants, and each of them, and pursuant to Song-Beverly, Plaintiff has sustained and is entitled to consequential and incidental damages in amounts yet to be determined, plus interest thereon at the legal rate. Plaintiff will seek leave of court to amend this complaint to set forth the exact amount of consequential and/or incidental damages when those amounts have been ascertained.

49.   As a direct result of the acts and/or omissions of Defendants, and each of them, and in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to Song-Beverly, Plaintiff, in addition to other remedies, is entitled to the recovery of her attorney's fees based upon the actual time expended and reasonably incurred, in connection with the commencement and prosecution of this action.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## THIRD CAUSE OF ACTION

## VIOLATION OF THE SONG-BEVERLY WARRANTY ACT § 1793.2

(Against All Defendants and DOES 1 through 25, Inclusive)

50. Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 30 of this Complaint, as though fully set forth herein.

51. Pursuant to Civil Code Section 1793.2 (a), a manufacturer that sells consumer good in California, for which it has made an express warranty, shall maintain service, and repair facilities or designate and authorize independent service and repair facilities to carry out the terms of those warranties.

52. Pursuant to Civil Code Section 1793.2 (b), when service and repair of goods is necessary because they do not conform to the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative.

53. Civil Code Section 1793.2 (d) further states that goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days.

54. The sale of the Subject Vehicle was accompanied by express warranties, including a warranty guaranteeing that the Subject Vehicle was safe to drive and not equipped with defective parts, including the Radio Electrical, Engine and Excessive Oil Consumption Defects.

55. Plaintiff delivered the Subject Vehicle to FCA authorized service representatives, B&W, CERRITOS, and PREMIER on several occasions for the non-conformities. The Subject Vehicle was delivered for repairs to components including, but not limited to, the transmission, transfer case, powertrain, engine, 4-wheel drive and driveshaft defects, for problems which amount to nonconformities to the express warranties that accompanied the sale of the Subject Vehicle.

56. Since delivery of the Subject Vehicle to B&W, CERRITOS, and PREMIER, it has failed to tender the Subject Vehicle back to Plaintiff in conformance with FCA's warranties.

57. Plaintiff is entitled to justifiably revoke acceptance of the Subject Vehicle under Civil Code Section 1794, et seq.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

58. Plaintiff hereby revokes acceptance of the Subject Vehicle.

59. Plaintiff is entitled to rescission of the contract pursuant to Civil Code Section 1794, et seq.

60. Plaintiff is entitled to recover any "cover" damages under Commercial Code Sections 2711, 2712, and Civil Code Section 1794, et seq.

61. Plaintiff is entitled to recover all incidental and consequential damages pursuant to Civil Code Section 1794 et seq and Commercial Code Sections 2711, 2712, and 2713 et seq.

62. Plaintiff is entitled, in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages in that FCA, B&W, CERRITOS and PREMIER who have willfully failed to comply with its responsibilities under the Act. Moreover, Defendants failed to conduct a thorough investigation to ascertain if restitution and/or a repurchase was required under Song-Beverly. *Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294; *Lukather*, supra, 181 Cal.App.4th at 1051; CACI 3201.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

A. For replacement or restitution, at Plaintiff's election, according to proof;

B. For incidental damages, according to proof;

C. For consequential damages, according to proof;

D. For a civil penalty as provided in Song-Beverly, in an amount not to exceed two times the amount of Plaintiff's actual damages;

E. For actual attorney's fees, reasonably incurred;

F. For costs of suit and expenses, according to proof;

G. For the difference between the value of the Subject Vehicle as accepted and the value the Subject Vehicle would have had if it had been as warranted;

H. For remedies provided in Chapters 6 and 7 of Division 2 of the Commercial Code;

I. For pre-judgment interest at the legal rate; &

J.    For such other relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that all triable issues concerning the causes of action be presented to a jury.

Dated: January 29, 2021               JOHNSON ATTORNEYS GROUP

By: _____
Mitchel Brim, Esq.
Attorneys for Plaintiff,
DONN EDWIN COTTOM

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL